IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

**EOD**
08/16/2006

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| BRITTANY KAYE WAYMAN | § | Case No. 05-68056 |
| | § | |
| | § | |
| Debtor | § | Chapter 13 |

## MEMORANDUM OF DECISION

This matter came before the Court upon hearing of the Chapter 13 Plan filed by the Debtor, Brittany Kaye Wayman, and the objection thereto filed by Ronald E. Stadtmueller, Standing Chapter 13 Trustee (the "Trustee"), in the above-referenced case. The Trustee objected to the confirmation of the plan on the grounds that, among other deficiencies, the Debtor is not applying all of her projected disposable income as required by 11 U.S.C. §1325(b)(1)(B).[1] At the conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[2]

### Background

The Debtor, Brittany Kaye Wayman, was formerly married to Bobby Wayman. As a portion of her pre-petition community property division with Mr. Wayman, she agreed to transfer her interest in the marital homestead to Mr. Wayman in exchange for the

---

[1] Other confirmation objections raised by the Trustee were resolved prior to the hearing.

[2] This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this contested matter since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (L), and (O).

payment of $22,000 from her former husband's 401k plan, such sum representing her undivided ½ interest in the equity in that homestead which had accrued during the marriage. Such sum was awarded to her in February, 2005, and that amount was initially segregated into a separate account in her name in the former husband's 401k plan. The Debtor subsequently effectuated a rollover of those sums into her own previously-existing retirement plan in late September, 2005. Those sums constituted the last sums which the Debtor will receive from her divorce settlement.

As is not uncommon during a marital dissolution, the Debtor was experiencing financial problems. Those problems had been exacerbated in August, 2005 by a change affecting her employment as a quality manager for a manufacturing company, wherein she had sustained a salary reduction of approximately $18,000 per year. To address the increasing financial pressures, the Debtor had utilized credit cards and had borrowed money from her father during the transition period.

Once the $22,000 had been rolled over into her own retirement plan, she invaded that plan and withdrew approximately $13,000 in October, 2005 which she utilized to pay outstanding bills. She paid $6,000 to her father, $5,500 to the IRS in satisfaction of 2004 tax claims, $1,250 to American Express and $550 on other miscellaneous installment debt.

The Debtor's financial struggles continued and, on December 30, 2005, she filed a voluntary petition for relief under Chapter 13. She disclosed in her Statement of

Financial Affairs the IRA distributions and all of the creditors which had been paid therefrom. She filed Official Form B22C — entitled "Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income" — but she did not include any of the $13,000 of IRA distributions in the calculation of current monthly income in Part I of that official form. The Debtor also filed a Chapter 13 plan which proposes to pay $400 per month for a period of 48 months which, by the Trustee's subsequent calculations, will yield the sum of $9,327.44 toward the satisfaction of allowed unsecured claims.[3]

The Trustee has objected to the confirmation of the Debtor's plan on the grounds that the IRA distribution should have been included in the calculation of "current monthly income;" that the inclusion of such income in that calculation would increase monthly disposable income from $160.81 to $1,269.14; and that the Debtor's alleged failure to include the IRA distribution in the B22C calculation correspondingly results in the Debtor's subsequent failure to utilize all of her projected disposable income in the first 48 months to fund the plan in violation of 11 U.S.C. §1325(b)(1)(B).

## Discussion

In the context of considering confirmation of a Chapter 13 plan proposed by a debtor who is not engaged in business, 11 U.S.C. §1325(b), as revised by the Bankruptcy

---

[3] This would result in a projected 20.54% distribution to the unsecured class if all scheduled unsecured creditors become holders of allowed claims.

-3-

Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), now provides that:

> (b)(1) [i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
> 
>> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>> 
>> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.
> 
> (2) For purposes of this subsection, the term "disposable income" means *current monthly income* received by the debtor ... less amounts reasonably necessary to be expended—
>> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor... (emphasis added).[4]

The term "current monthly income" or "CMI" is defined by 11 U.S.C. §101(10A) which, as applied to the current Chapter 13 case, provides that CMI is the equivalent of:

> (A) ...the average monthly income from all sources that the debtor receives... without regard to whether such income is taxable income, derived during the 6-month period ending

---

[4] If a debtor is engaged in business, §1325(b)(2)(B) also deletes from "disposable income" any income which must be expended "for the payment of expenditures necessary for the continuation, preservation, and operation of such business."

-4-

on—

> (i) the last day of the calendar month immediately preceding the date of commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); ....

The Trustee asserts that the Debtor is not applying all of her projected disposable income to be received in the applicable commitment period to make payments to unsecured creditors as required by 11 U.S.C. §1325(b)(1)(B) because the IRA distributions were not encompassed in the calculation of disposable income outlined in Official Form B22C. He is right for the wrong reason.

The Debtor was not required to include the IRA distribution in the calculations mandated by Official Form B22C because it did not constitute income received by the Debtor in the preceding six-month period prior to the month in which the case was filed. It is uncontested that the applicable six-month period for this case extended back to June 1, 2005, and the Trustee appears to place reliance upon the fact that the Debtor withdrew the $13,300 from her IRA within that six-month period. While it is certainly true that "amounts you withdraw from your IRA are fully or partially taxable in the year you withdraw them,"[5] the fact that the Debtor would realize taxable income at that point is of no consequence.

---

[5] *See* "Topic 451 – Individual Retirement Arrangements (IRAs)" at http://www.irs.gov/taxtopics/tc451.html.

§101(10A) is clear that, for the purposes of calculating current monthly income, a debtor is deemed to have received income "without regard to whether such income is taxable income." Thus, while the Debtor's appropriation of the IRA may not have constituted *taxable* income to her until October 2005 when she received the premature distributions, that does not change the fact that she *received* the income (if at all)[6] in February 2005 when the IRA account in her ex-husband's 401k plan was placed in her separate name and the funds came within her care, custody and control. Therefore, because her receipt of income as evidenced by the transfer of the IRA to her control was outside the six-month period outlined under §101(10A)(A)(i), it did not have to be reported on Official Form B22C, nor could it properly have any effect on the Debtor's effort to confirm her proposed plan.[7]

---

[6] A colorable argument could be made that the Debtor did not "receive" income at all in this divorce settlement exchange since she merely obtained cash of an amount equivalent to her previously-owned equity interest in the homestead.

[7] Even if the amount should have been included in the B22C calculation of disposable income, this would have been one of those cases, as mentioned in decisions construing the statutory changes in this area, in which "projected" disposable income would differ from the calculation of "disposable income" under §§1325(b)(2) and (3). "'[P]rojected disposable income' under section 1325(b)(1)(B) necessarily refers to income that the debtor reasonably expects to receive during the term of the plan," *In re Hardacre*, 338 B.R. 718, 723 (Bankr. N.D. Tex. 2006), and the *projected* disposable income may vary from the disposable income calculation if "the debtor can show that there has been a substantial change in circumstances such that the numbers contained in Form B22C are not commensurate with a fair projection of the debtor's budget in the future." *In re Jass*, 340 B.R. 411, 418 (Bankr. D. Utah 2006). That is exactly the scenario presented in this case since it is uncontested that the Debtor would not have realized such income during the pendency of the plan and any realistic projection of disposable income would not have included sums which the Debtor would never actually procure in the post-petition period. *See In re Grady*, 343 B.R. 747 (Bankr. N.D. Ga. 2006) [court must consider the change in circumstances caused by joint debtor's recent inability to work due to medical problems in determination of the debtors' projected disposable income].

Yet the plan as proposed cannot be confirmed. Another change imposed by BAPCPA is the imposition of an "applicable commitment period" for which the debtor's projected disposable income must be tendered for the benefit of unsecured creditors.[8] Pursuant to §1325(b)(4)(A) and as documented through the use of Parts I and II of Official Form B22C,[9] the applicable commitment period is three years, unless the debtor's annualized current monthly income exceeds the applicable median family income for a household of that size in the debtor's state of residence, whereupon the applicable

---

[8] The amended statute also directs that such disposable income be applied "to make payments to unsecured creditors under the plan" and not merely dedicated to the plan payments generally as under the former law.

[9] Section 1325(b)(4) provides that:

For purposes of this subsection, the "applicable commitment period" —

    (A) subject to subparagraph (B), shall be —

    (i) 3 years; or

    (ii) not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than —

        (I) in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

        (II) in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

        (III) in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $525 per month for each individual in excess of 4;
....

commitment period will be increased to five years. If the projected disposable income requirement is imposed, the debtor may be excused from that commitment "only if the plan provides for payment in full of all allowed unsecured claims over a shorter period." 11 U.S.C. §1325(b)(4)(B).

As previously mentioned, the Debtor has proposed a plan under which she would tender the sum of $400 per month for a period of 48 months. However, her own B22C clearly reveals that the applicable commitment period is five years. The Debtor's current monthly income of $5,246.67 multiplied by 12 equals $62,960.04 which significantly exceeds the median family income of $46,454 applicable on the date of filing for a two-person household in the state of Texas. It is uncontested that the Debtor's proposed plan does not propose to pay all unsecured claims in full.

Thus, the only means by which the Debtor could escape a commitment period of five years for her plan payments is by waiver — i.e., if the provisions of §1325(b) had never been invoked. But the provisions of §1325(b) have been invoked by the Trustee. Though it is true that neither the Trustee nor any other party objected to confirmation specifically upon the Debtor's failure to fulfill the applicable commitment period, that is not what is required by the plain language of the statute. §1325(b)(1) states in relevant part that:

> [i]f the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless ...

-8-

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

Though based upon an erroneous interpretation of projected disposable income, the Trustee clearly objected on the grounds that "[i]t does not appear that the debtor(s) has dedicated all disposable income to the proposed plan as required by 11 U.S.C. 1325(b)(1)(B)."[10] Since the Trustee objected to confirmation on the basis of §1325(b)(1)(B), it became incumbent upon the Debtor to comply in all respects with that provision. She clearly has failed to do so. Therefore, confirmation of the Debtor's proposed Chapter 13 plan must be denied.

In light of this initial denial of confirmation, the Debtor shall file a new Chapter 13 plan within thirty (30) days of the date of this Order and, in the event that the Debtor fails to do so, absent a further order of the Court extending such deadline for cause shown, or in the event that the Debtor thereafter fails to confirm such new Chapter 13 plan upon consideration by this Court under its normal procedures, this Chapter 13 case shall be dismissed, pursuant to §349(a) of the Bankruptcy Code, without further notice or hearing and with prejudice to the rights of the Debtor to file a subsequent petition under any chapter of Title 11, United States Code, for a period of one hundred twenty (120) days

---

[10] See *Trustee's Confirmation Report, Witness & Exhibit List* (dkt #7) at p. 3.

from the entry of the order of dismissal.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[11] pursuant to FED. R. CIV. P. 52, as incorporated into contested matters in bankruptcy cases by FED. R. BANKR. P. 7052 and 9014. A separate order shall be entered consistent with this opinion.

Signed on 08/16/2006

*[signature: Bill Parker]*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[11] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.